My name is Tom Applebaum. I'm here for the appellant, Jack Noel. This case was granted summary judgment in district court based primarily on two issues. The first is whether or not my client was disabled with regards to the Missouri Human Rights Act and whether or not he was constructively discharged from his position. The court granted summary judgment based on primarily because it found that he was not disabled under the meaning of the act because there was not a reasonable accommodation for his disability. My client had diabetes and the excessive travel that he was forced to endure exaggerated the condition and forced him to quit his position after being hospitalized for three times. In their discussion of this case, the issue of the amount of travel is pretty critical to this because it was the cumulative effect of all the travel that actually exacerbated the condition and was not compatible with his disability. The court went through and discussed at length about the issue of travel. Now, it was noted that he did actually get a temporary project that reduces the amount of travel, but that was cut short and he was put back out of the road. If the court looks at the issue here of whether or not there's a reasonable accommodation, there's a number of different things that qualify as a reasonable accommodation. One of them is altering the work schedule. I suggest that that was available to the defendants in this case. The other would be to put... Didn't the evidence, though, show that travel was an intricate part of this job? Travel was a part of the job. It's a question of the amount, though. It's kind of akin to somebody working at a counter that has a back issue and they can't stand for eight hours a day. Well, can they stand for two-hour time periods at a time? The court's found that breaking up the work schedule and giving breaks, actually, is a reasonable accommodation. So when you start to examine what is a reasonable accommodation, which is crucial to this case, it's a very fact-intensive issue. So even the word extensive is a broad and subjective term. How much travel is extensive? When he took the position, he was told that the traveling would be one to two weeks a month. It turned out to be pretty much continuous. Now, when you look at the fact that he was given a temporary assignment here in St. Louis, all the projects that they were working on were temporary by nature. They were working place to place in different areas to set up these video head offices, that they call, and they were doing training. Another option would have been to have people come to St. Louis for the training. That was a key component of what they were doing in that video field service position that he was working in. Of course, wouldn't that be substantially more expensive? Well, not necessarily. I mean, is it more expensive? Part of the issue here is that they never engaged in an investigative interaction with the plaintiff to determine whether or not there was a reasonable accommodation. Maybe I missed it in your opening brief, but I didn't see that argument until the reply brief. Did I miss it in your opening brief? I believe it was brought up in the opening. The interactive process requirement? Yeah. I mean, to me, that's essential because when you're talking about something that's so fact-intensive and something that's as fungible. Was that raised to the district court? I don't recall seeing any discussion of that in the district court's opinion either. My arguments in the district court were focused primarily on just the reasonable accommodation, and the interactive process was part of the overarching theme of my argument in that. I mean, it all gets down to what is reasonable accommodation and whether or not there's an issue of material fact with regards to what my client could endure. Did you raise to the district court that the defendants didn't engage in the interactive process? That was part of the overarching theme. Whether or not there was not a point of argument that brought in the whole interactive investigation that this court has found that, and reasonably so because it is so fact-intensive. I mean, when you have something like travel that's kind of baked into a position like this, I mean, AT&T is a telecommunications company. Part of their business model is convincing other people that they can do things by telecommuting instead of actually traveling. So with the mix of all this, and then you have this exacerbating condition that was continuing, there could have been a lot of other accommodations that were made, one of which, of course, he had had a 28-year-long career at AT&T. He was qualified for several other positions, and there's a lot of issues with regards to material fact based on whether or not he had access to transfer into a position. Every time that that was brought up, he was told that there was a freeze on and he was not getting access. So the district court placed a burden on my client to actually demonstrate that there was an open position he could have been moved into. My argument is that he demonstrated that by the fact that he came from a position and was qualified for numerous other positions within the company, and that those positions would have been available to him had they actually engaged in accommodating his condition. So he was going along. This was a two-year process that he was undergoing, and then he was faced with the additional stress that exacerbated his condition by being placed on a performance improvement plan, and that added to his stress level, which then kind of pushed him beyond the point of no return. Now, with regards to the constructive discharge claim, that, I mean, to me, the district court put the burden on the plaintiff to show that the employer actually changed conditions with a certain amount of intent. There's no burden to show that there was any intent. What changed in this situation was my client and his condition. So he's being told by his doctors that he's going to die if he keeps doing what he's doing, okay? So, I mean, to me, that's like saying, you know, if your employer tells you walk into oncoming traffic and you say no, that's not quitting your job. That's being constructively discharged because you're refusing to do something that's going to damage your health. I mean, the test here is that is it intolerable for any reasonable person? I think anybody whose doctor tells them that if they keep doing what they're doing, they're going to die, they would consider that intolerable. So as far as constructive discharge goes, I think that the burden's been kind of shifted, and that's not what this court has held in the past. So when you look at the reasonable accommodation issue, I think that there were several different ways that his employer could have accommodated him, and none of that could really be addressed with regards to what was given as part of the record because there was no interactive investigation that the defendants engaged in with my client. So given those two points, I would request that you reverse the district court's decision so we can bring about more of those material facts and address them at that level. Is there anything in the record that supports the contention that this training could have been done remotely? Oh, some of the duties that were talked about, he was managed remotely. So really it was only a matter of convenience to actually send him out to these places to provide this training. But some of the responsibilities were definitely done remotely. This was a very fungible position that had a lot of leeway they were making up their schedule and their work duties as things went along. I'll yield the rest of my time if there are no more questions. Very well. We will next hear from Mr. Whitcher. Good morning. May it please the Court, I'm Lance Whitcher. I have with me at Council table my law partner, Heidi Durer, and we represent Applebee's, SBE, Internet Services, Inc., and AT&T Corp. Among other reasons that with our limited time might be left to our brief, this case and dismissal on summary judgment should be affirmed for the simple reason that Jack Noel doesn't meet the definition of disability under the Missouri Human Rights Act. There is no genuine dispute, no dispute based upon evidence in the record, that travel was an essential job function for the position that Mr. Noel held. He was a field support person, meaning he would be in the field. There's no dispute that due to his diabetes, Mr. Noel could not travel at all or certainly at the level that was required for field support engineers. And there's no dispute that there was no accommodation that would allow him to perform the field support engineer position because he couldn't travel. Even if Mr. Noel was entitled to protections under the MHRA, and since he doesn't meet the definition, it's our position that he is not entitled to those protections. Was there any evidence that he could have done the training remotely? There is no evidence to that, Judge Grinder. The only evidence about remote duties was with regard to his supervision. His supervisor, Chris Cooley, whom his counsel deposed in this case, testified that he, because he lived and worked in San Antonio, managed these half a dozen or so field support engineers remotely. There's no evidence that Chris Cooley was performing any training. He was simply managing individuals remotely. Regardless of whether there were some duties that could be performed remotely, and Appellant never pointed to those, never offered any in the record, there's no dispute that travel was required. Appellant's counsel suggests that we could fly people into St. Louis to train them here, and Judge Grinder, you asked the question about isn't that more expensive. It would be substantially more expensive. At the time that this occurred, this was the rollout of AT&T's new product, U-verse, and they were rolling it out nationally. Each of these video head-end offices had to be, the personnel had to be trained on how to operate these video head-end offices, and that training required four weeks. It's a nationwide program, offices nationwide. We're going to fly in everybody that Mr. Noel would have to train. We're talking about only six people that would do that training, and that sets aside the fact that there was inventory that had to be completed at each of those video head-end offices. So there's simply, as this court knows, when we look at what is essential job function, and significantly here in Missouri, the Missouri Supreme Court looks to federal law for making that determination about what is an essential job function. In the case of Daugherty v. City of Maryland Heights, which, of course, we all well know, was where the Missouri Supreme Court found contributing factor applies under the MHRA. Nevertheless, the Missouri Supreme Court, en banc, cited to this court's decision in Moritz v. Frontier Airlines and cited to the ADA Regulation 29 CFR 1630.2 in setting forth what courts should evaluate for essential job functions, and they say specifically five factors. It's the employer's judgment as to which functions are essential, written job descriptions that set forth what those essential functions are, and Mr. Noel doesn't dispute that he understood he'd have to travel. The amount of time spent on the job performing that function. As counsel has aptly pointed out, this job required continuous travel. I think his terms were it was baked into the position. Further, the fourth factor, the consequences of not requiring the employee to perform the function. Well, if training wasn't conducted, if inventory wasn't completed, the video head-in offices couldn't be opened, and U-verse customers or potential U-verse customers in those particular markets would never get the product. And finally, the past or current work experiences of employees in similar jobs. We're talking about six employees who held these jobs to train individuals nationally and to complete this inventory. If its workforce was cut down to five, that would certainly substantially limit the number of video head-in offices that could be open. What about his argument that with AT&T's high-tech video conferencing capabilities, it could have beamed Mr. Noel into these video head-in offices and accomplished the training in that manner? I'm not sure, Judge Colleton, how that inventory could be completed remotely in that regard. But regardless, we're talking about if we were just focusing on the training, which is just one component of this job. What's the inventory work? Sure. Well, in these video head-in offices, and I don't know, Judge, to be honest that that's necessarily set forth in the record in any detail what inventory would be kept in these video head-in offices. If it's not in the record, then it's not going to be a basis. It's certainly in the record that inventory of equipment must be completed on-site. So you're saying that's an essential function as well, and that can't be done by video. Absent the product, how do they distribute it to the customer? But with regard to your point, Judge Colleton, about training and AT&T being a high-tech company, again, we're talking about four weeks of training for each of these video head-in offices. And while I don't know that there was anything offered in the record about the usefulness of training, certainly in-person training would be more effective than remote training. But regardless, even the Missouri courts rely upon federal law, and federal law, as I just mentioned, Judge Colleton, says it's certainly in the employer's judgment as to which functions are essential. And AT&T, before Jack Noel ever held that job, made a determination that training would need to be completed, four weeks of training at each video head-in office, and that training would be done in person. Here, significantly, we really don't get to – well, let me step back. The definition of disability under the Missouri Human Rights Act is different than the definition of disability under the ADA. And the definition under the Missouri Human Rights Act specifically says that an individual isn't entitled to the protections of the Act if their physical or mental impairment that substantially limits one or more of the person's major life activities, which with or without a reasonable accommodation, does not interfere with performing the job. And as cited in our opinion, the Missouri Court of Appeals in Medley, as well as the NCHR regulations, indicate that you would make that evaluation based upon the individual's ability to perform their existing job. That regulation doesn't talk about neither the statute as to the definition, nor the regulation as to the definition of disability. It doesn't talk about any interactive dialogue with simply determining whether the individual is disabled within the meaning of the statute. It specifically says the individual has to be able to perform the job with or without an accommodation. But here, there was no accommodation that would allow Mr. Noel to perform this actual job. Mr. Noel jumps to the next step by offering up a failure-to-accommodate claim before he ever addresses the fact that he doesn't meet the definition of disability. There are only six of these individuals that do this job. Five of them and one part-timer isn't going to allow them to do the job. So the fact that he couldn't perform full-time and do travel would suggest that that would materially alter the nature of the position, as the court in Medley said, isn't required. Similarly, his suggestion that he not be required to travel as much amounts to the same thing when, as counsel pointed out, travel was a continuous requirement for this particular job. Under the MHRA's definition of disability, you can't jump to the step of looking at a reasonable accommodation claim, a reasonable accommodation, and saying the person would otherwise meet the definition of disability. That is a separate claim. That is a separate claim that Mr. Noel never asserted in his charge of discrimination, never asserted in his complaint or amended complaint, and never argued to the district court. Courts have routinely dismissed claims where failure-to-accommodate are neither exhausted nor pled. The Medley case, again, dealt with such issue. In fact, the Medley case noted that the individual was not disabled because she could not regularly and reliably attend work, which was an essential function of the job. Judge Weber in Evans v. Hardy Systems and Judge Sippel in Michelson v. Wells Fargo Advisors similarly recognized that while you have to look to whether the individual is disabled under the definition, that doesn't require an interactive dialogue. That is a separate claim that must be exhausted. And, in fact, here, even if we jumped to the next step and assumed he was, in fact, disabled under that definition, he was offered a reasonable accommodation in that he was offered to look for other positions but decided to limit his job search to the St. Louis market and then ultimately decided that he wasn't going to seek any positions outside of the one that he had held. I apologize that I did not get to speak to constructive discharge. If there are no other questions. Thank you very much. Does Mr. Applebaum have additional time? He does, Your Honor. A minute and 38 seconds. One minute and 38. Thanks. I just want to point out that the temporary duties that he was given here in St. Louis were actually inventorying on a nationwide basis. So that could actually be done remotely as well. And I think what counsels. Say that again. He was doing inventory work here. That was the temporary job assignment. What does the record show about this inventory function then? What does the employee do? The record shows that it can be done remotely. What does the employee do in this inventory? He just tracks what equipment is available at each VHO. Tracks what equipment is available? Yeah. What does that mean, track? To make sure that if you've got a VHO office in Dallas. I mean, when he goes to Dallas, does the guy go around and write down all the serial numbers off of the equipment and check it off against a log? No, not physically. He doesn't? No. What does he do? He looks at what equipment has been allocated for that office to make sure that it's available to be up and running. What do you mean looks at it? I'm trying to understand. They track it electronically. I believe that the method that they use is that when equipment is sent to an office, that they track it electronically. And that's what he was doing. He was going office by office to make sure that they had the equipment that they needed to get up and running. You mean so they have a record at the sending location that we've sent the following items to Dallas? Yeah. Then you coordinate with on-site personnel. AT&T seemed to be saying, well, they have to go to Dallas and do some sort of inventory work while they're on-site. It may be easier to interact with somebody right there in person, but that's not what the record shows. He had a temporary position that was here in St. Louis, and that position was inventory. And I think what he's confusing duties that were assigned with essential work functions. It's not essential that he be on the road constantly. That is how the work was assigned to him, and that is what the problem is. The inflexibility with regards to how they were handling his work was what was the failure to reasonably accommodate his disability. So if there's no other questions, I'll knock it down. Thank you very much. The case has been well presented by both sides, and we will take it under advisement and render a decision in due course. Thank you both for your attendance here today. Madam Clerk, the next case. The next case for argument is case number 13-3416, Western Arkansas, Marvin Reeves v. Lieutenant Jacob King. It looks like you're all ready.